UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
EDWARD B. HUBBUCH,

               Plaintiff,

        - against -

HELBRAUN & LEVEY LLP, et al.,

               Defendants.
--------------------------------------------------------x

**MEMORANDUM & ORDER**
25-CV-0717 (PKC) (TAM)

PAMELA K. CHEN, United States District Judge:

On February 7, 2025, Edward Hubbuch ("Plaintiff"), proceeding *pro se*, initiated this action against law firm Helbraun & Levey LLP ("HL"); HL lawyers David Helbraun, Hamutal Lieberman ("Lieberman"), and Tyler Morris ("Morris") (together, the "HL Defendants"); law firm Gleichenhaus, Marchese & Weishaar P.C. ("GMW"); and GMW lawyer Scott Bogucki ("Bogucki") (together, the "GMW Defendants") (collectively, "Defendants"). Plaintiff alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–68, and fraudulent inducement, stemming from Defendants' provision of legal services to Plaintiff between December 2023 and October 2024. (Compl., Dkt. 1.) On March 14, 2025, the HL Defendants moved to dismiss Plaintiff's Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") (HL Mot. to Dismiss, ("HL Mot."), Dkt. 16; on March 24, 2025, the GMW Defendants did the same (GMW Mot. to Dismiss, ("GMW Mot."), Dkt. 21). On March 14, 2025, the HL Defendants also moved for sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 11 ("Rule 11"). (HL Mot., Dkt. 16.) The same day, Plaintiff responded with his own motion for Rule 11 sanctions against the HL Defendants. (Pl. Mot., Dkt. 17.) For the reasons set forth below, the Court grants the HL Defendants and the GMW

Defendants' motions to dismiss and denies the HL Defendants' and Plaintiff's respective motions for Rule 11 sanctions.

## BACKGROUND

### I.  Factual Allegations[1]

#### A.  Plaintiff's Relationship with HL Defendants

Plaintiff and the HL Defendants' relationship began in 2019, when Plaintiff hired the HL Defendants to represent him in matters relating to his Memphis Soul hospitality business in Brooklyn, New York.  (Compl., Dkt. 1, ¶¶ 57, 10.)  In October 2022, Plaintiff signed a 10-year lease agreement for a new Memphis Soul location in the East Village (the "East Village location"). (*Id.* ¶ 50.)  During construction on the new location in February 2023, the location's gas service was disconnected and the gas meter removed by Consolidated Edison, who had gained entry to the property through the landlord.  (*Id.* ¶ 51.)  Plaintiff retained the HL Defendants to represent him with respect to the gas issue, including filing a breach of contract claim.  (*Id.* ¶ 53.)  However, Plaintiff alleges that Lieberman did not file a lawsuit and had "little to no communication with Plaintiff" over the course of the next six months.  (*Id.* ¶ 54.)  Plaintiff also alleges that Lieberman "instructed Plaintiff to disregard the landlord's demands for rent throughout the summer and fall" in anticipation of a potential rent abatement offer based on the gas issue.  (*Id.* ¶ 55.)  In the meantime, Plaintiff claims, Memphis Soul was still legally responsible for the $12,000 in monthly rent that Plaintiff had personally guaranteed.  (*Id.* ¶¶ 54, 50.)

On December 11, 2023, Plaintiff received a formal notice of non-payment and eviction from the landlord.  (*Id.* ¶ 55.)  Plaintiff emailed Lieberman the notice, which Lieberman also

---

[1] For purposes of this Memorandum & Order, the Court assumes the truth of Plaintiff's non-conclusory, factual allegations in the Complaint. *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

received from the landlord's attorney.  (*Id.* ¶¶ 56–57.)  However, Lieberman failed to appear or respond on Plaintiff's behalf at the January 2024 eviction hearing, which resulted in a default eviction order and monetary judgment against Plaintiff.  (*Id.* ¶ 58.)  In an affidavit Lieberman filed in Housing Court submitted on February 7, 2024, she acknowledged her error in failing to appear at the eviction hearing and attributed this mistake to "law office failure."  (*Id.* ¶ 64.)  She then appeared on Plaintiff's behalf at a subsequent eviction hearing on February 14, 2024.  (*Id.* ¶ 66.)  Before the hearing, Lieberman spoke with the landlord's attorney out of Plaintiff's earshot.  (*Id.* ¶ 67.)  Lieberman then presented Plaintiff with a "dramatically more onerous . . . [settlement] offer" than one previously extended.  (*Id.* ¶ 70.)  Although Plaintiff refused the offer and requested to be heard by the Housing Court, Lieberman ultimately "induced" Plaintiff to sign a stipulation of settlement ("Stipulation of Settlement") by "making specific oral promises" that the HL Defendants "would provide immediate financial assistance in paying [Plaintiff's] rent and . . . arrears."  (*Id.*)  Lieberman also promised Plaintiff that the HL Defendants would "immediately fil[e] the long-promised lawsuit for breach of contract against his landlord at no cost to Plaintiff."  (*Id.* ¶ 71.)

The HL Defendants, however, did not fulfill these promises.  Regarding the promise of financial assistance, Lieberman maintained to Plaintiff that this was a gift too vague to be enforceable and claimed the offer she had initially made was to return any unused funds from Plaintiff's retainer with the HL Defendants.  (*Id.* ¶ 40–41.)  While the HL Defendants did file the promised breach-of-contract lawsuit against the landlord on April 4, 2024, Plaintiff alleges Lieberman and Morris "intentionally inserted the incorrect date on the verification page so that the filing would be automatically rejected by the Clerk of the Court and returned for correction."  (*Id.* ¶¶ 85–87.)  According to Plaintiff, the HL Defendants thereafter refused to re-file the lawsuit

because "they knew that the Stipulation of Settlement agreement they had fraudulently induced him to sign in February 2024 barred counterclaims against the landlord with prejudice," and that "Lieberman and Morris knew the lawsuit would be summarily dismissed if refiled and potentially subject both attorneys to sanctions." (*Id.* ¶ 87.)   After Plaintiff refused to promise not to sue the HL Defendants for malpractice, they terminated their representation of him.[2] (*Id.* ¶ 88.)

**B.    Plaintiff's Relationship with the GMW Defendants**

In April 2024, before the HL Defendants terminated Plaintiff as a client, they introduced him to Bogucki over a video call to "discuss potential bankruptcy options." (*Id.* ¶¶ 73–77.)   The call invitation included Bogucki's GMW email address. (*Id.*)   During the call, Plaintiff learned that putting himself or his company into bankruptcy would preclude him from filing any lawsuits during the bankruptcy process. (*Id.* ¶¶ 78, 83.)   Plaintiff believed this to be a tactic by the HL Defendants to shield themselves from any malpractice claims Plaintiff might bring against the HL Defendants related to the dispute with the landlord. (*Id.* ¶ 79.)

**C.    Plaintiff's Alleged Injuries**

In or about July 2024,[3] Plaintiff was forced to abandon the East Village location. (*Id.* ¶ 89.)   At that point, Plaintiff was $4,000,000 in debt. (*Id.*)   The landlord re-let the premises to a tenant to whom he gave "free rent while the same necessary [gas] repairs [Plaintiff had requested] were made." (*Id.* ¶ 108.)   In addition, three days after receiving the December 11, 2023 eviction notice,

---

[2] The Complaint does not indicate when the HL Defendants terminated their representation of Plaintiff, but the Court assumes it was in late April 2024.

[3] The Court infers this approximate date from the reference in the Complaint to "[t]hree months later," (Compl., Dkt. 1, ¶ 89), meaning three months after the events of April 2024 that are described in the antecedent paragraphs.

Plaintiff "suffered a sudden cardiac event—rapid atrial fibrillation," which required hospitalization. (*Id.* ¶¶ 60–61.)

Plaintiff seeks to recover: (1) "Business Losses," *i.e.*, "lost revenue, lost concessions, lost investments, and business costs" in excess of $1.5 million; (2) "Fraudulently Induced Personal Liability," *i.e.*, "non-dischargeable lease obligations" in excess of $300,000; (3) "Reputational Harm," *i.e.*, "[i]rreparable damage to Memphis Seoul's brand and goodwill"; (4) "Medical & Emotional Damages," *i.e.*, "[s]evere stress leading to hospitalization for cardiac arrest and PTSD-level trauma"; and (5) legal fees and costs. (*Id.* at ECF[4] 65.)

### D.    Cover-Up Conspiracy

Plaintiff also claims that the HL Defendants conspired with Bogucki to "cover up" their "fraud" scheme with respect to HL's representation of Plaintiff in his landlord dispute. (*Id.* ¶¶ 131–32.)  In support of this claim, Plaintiff alleges that "[a]fter Plaintiff publicly documented Defendant Scott Bogucki's involvement in the scheme in September 2024,[5] Defendant Helbraun & Levey LLP and Scott Bogucki took deliberate steps to retroactively alter the factual record, fraudulently 'backdating' his affiliation with the firm in the process," (*id.* ¶ 92), by adding Bogucki to HL's website as "of counsel" in October 2024, (*id.* ¶ 93), and creating an HL email address for Bogucki, (*id.* ¶ 95).

## II.    Procedural History

Given the extensive number of filings in this case and two relevant state court actions, the Court only briefly summarizes the relevant procedural history across all cases.

---

[4] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[5] Plaintiff began blogging his allegations on a website built presumably by Plaintiff, "helbraunleveymalpractice.com." (*See* Dkt. 10-8.)

A.      The State Court Actions

On July 16, 2024, Plaintiff filed a complaint in the New York County Supreme Court against the HL Defendants for legal malpractice, breach of fiduciary duty, fraud and misrepresentation, breach of contract, and intentional infliction of emotional distress. *Hubbuch v. Helbraun & Levey et. al.*, No. 100836/2024 (Kings Cnty. Sup. Ct.) ("First State Court Action"), Dkt. 23, ¶¶ 45–59; *id.* Dkt. 19 (an amended complaint filed on September 7, 2024, adds Defendant Morris to the state court action).  On September 10, 2024, Plaintiff filed an amended state court complaint to reference (but not name as a defendant) Bogucki. *Id.*, Dkt. 40.  The facts alleged in the amended state court complaint match those alleged in the instant action. *See id.*  On September 30, 2024, the HL Defendants notified the state court of their intention to move to dismiss Plaintiff's amended state court complaint with prejudice.  *Id.*, Dkt. 46.  On December 6, 2024, the HL Defendants sought a preliminary and permanent injunction against Plaintiff for posts he was making online regarding the HL Defendants.  *Id.*, Dkt. 93.  On January 22, 2025, the parties argued their motion to dismiss the amended state court complaint and the HL Defendants' requested injunctive relief.  (HL Mot., Dkt. 16, at 5.[6])  On March 4, 2025, Plaintiff filed a stipulation of voluntary discontinuance.  *First State Court Action*, Dkt. 143.  On May 1, 2025, the state court denied all outstanding motions as moot given Plaintiff's discontinuance and disposed of the case.  (Dkt. 32.)

Separately, on November 18, 2024, Plaintiff also filed a complaint in the same state court against the GMW Defendants alleging aiding and abetting legal malpractice, fraudulent inducement, breach of fiduciary duty, and negligent misrepresentation. *Hubbuch v. Bogucki et al.*,

---

[6] Citations to "Dkt." unaccompanied by any case citation refer to the docket of the instant case.

No. 160772/2024 (Kings Cnty. Sup. Ct.), Dkt. 2.  On December 30, 2024, the GMW Defendants notified the court of their intention to move to dismiss Plaintiff's complaint.  *Id.*, Dkt. 16. On March 24, 2025, Plaintiff filed a notice of voluntary discontinuance without prejudice, *id.*, Dkt. 31, which the state court granted on April 3, 2025, *id.*, Dkts. 34, 35.

### B.    The Instant Action

Plaintiff filed his Complaint before this Court on February 7, 2025, against all Defendants. (Compl., Dkt. 1.)  On February 20, 2025, pursuant to the Court's Individual Rules, the HL Defendants filed a letter requesting a pre-motion conference ("PMC") to discuss their anticipated motion to dismiss.  (Dkt. 8.)  The same day, the HL Defendants filed a motion for sanctions against Plaintiff.  (Dkts. 9–11.)  Also the same day, Plaintiff filed a response to the HL Defendants' PMC request and their motion for sanctions.  (Dkt. 13.)  On February 21, 2025, the Court denied the HL Defendants' PMC request and set a briefing schedule for a motion to dismiss and the motion for sanctions.  (2/21/2025 Dkt. Order.)  On March 14, 2025, the HL Defendants filed their motion to dismiss and motion for sanctions.  (HL Mot., Dkt. 16.)  Also on March 14, 2025, Plaintiff filed his own motion for sanctions against the HL Defendants.  (Pl. Mot., Dkt. 17.)  On March 24, 2025, the GMW Defendants filed a PMC request, (GMW Mot., Dkt. 21), which the Court converted to a motion to dismiss, (3/24/2025 Dkt. Order).  By April 23, 2025, all issues were fully briefed by the parties.  (*See* Dkt. 31.)  By May 1, 2025, the Court had received the disposal orders from both of Plaintiff's state court actions.  (Dkts. 26, 32.)

## LEGAL STANDARD

### I.    Motion to Dismiss

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

In assessing a complaint's sufficiency, a court "must construe [the complaint] liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106–07 (2d Cir. 2021) (citing *Palin v. N.Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Furthermore, "[i]t is well established that the submissions of a pro se litigant must be construed liberally," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal citations omitted), and read to "raise the strongest arguments they suggest," *McLeod v. Jewish Guild for the Blind*, 864 F.3d 154, 156 (2d Cir. 2017) (internal citations omitted). Although the court must assume that all factual allegations contained in the complaint are true, this solicitude "does not extend 'to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Roe v. St. John's Univ.*, 91 F.4th 643, 651 (2d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678)).

## II.    Motions for Rule 11 Sanctions

Rule 11 provides, *inter alia*, that:

> [b]y presenting to the court a pleading, written motion, or other paper[,] . . . an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances[,] . . . the pleading is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, the claims, defenses, and other legal contentions are warranted by existing law[,] . . . [and that] the factual contentions have evidentiary support.

Fed. R. Civ. P. 11(b). If, after notice and a reasonable opportunity to respond, the Court determines that Rule 11(b) has been violated, the Court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Fed. R. Civ. P. 11(c).

In determining whether an argument is merely losing or whether it is both "losing *and* sanctionable, . . . courts [must] resolve all doubts in favor of the party against whom sanctions are sought." *Int'l Techs. Mktg., Inc. v. Verint Sys.*, 850 F. App'x 38, 43 (2d Cir. 2021) (summary order) (quoting *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993)); *Bank v. CreditGuard of Am., Inc.*, No. 18-CV-1311 (PKC) (RLM), 2020 WL 1516107, at *2 (E.D.N.Y. Mar. 30, 2020). A court "ha[s] wide discretion in deciding when sanctions are appropriate," but "Rule 11 sanctions should be granted with caution and applied only when a particular allegation is utterly lacking in support." *Zeitlin v. Palumbo*, 532 F. Supp. 3d 64, 72 (E.D.N.Y. 2021) (quoting *Manhattan Enter. Grp. v. Higgins*, No. 18-CV-6396 (VSB), 2019 WL 4601524, at *2 (S.D.N.Y. Sept. 22, 2029) (internal citations omitted)). While Rule 11 also applies to *pro se* litigants, "the court may consider the special circumstances of litigants who are untutored in the law." *House v. Gen. Elec. Co.*, No. 23-CV-71 (LDH) (LB), 2025 WL 1309602, at *2 (E.D.N.Y. Apr. 4, 2025) (quoting *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 56 (2d Cir. 1989)). Ultimately, Rule 11 "must be read in light of concerns that it will . . . chill vigorous advocacy." *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 392 (S.D.N.Y. 2007) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)).

## DISCUSSION

### I.    Defendants' Motions to Dismiss

Defendants originally argued that Plaintiff's claims, subject as they were to pending state court actions, were barred by comity or abstention doctrines, and urged this Court to abstain accordingly. (HL Mot., Dkt. 16, at 7; GMW Mot., Dkt. 21, at 2.) Given that both state actions have been discontinued, abstention is no longer relevant and Defendants' arguments to this effect are moot, as they concede. (*See* Dkt. 30, 32.) The Court therefore addresses only the merits of

Defendants' Rule 12(b)(6) motions and does so based on the allegations in Plaintiff's Complaint in this case.

### A. Plaintiff's RICO Allegations against the HL Defendants must Be Dismissed

Plaintiff alleges that the HL Defendants engaged in "a pattern of racketeering activity, including conspiracy to commit fraud, wire fraud, extortion, fraudulent inducement[,] and obstruction of justice," in violation of the federal RICO statute, during and subsequent to their representation of Plaintiff between 2023 and 2024. (Compl., Dkt. 1, ¶ 1.) Both sets of Defendants argue that Plaintiff has failed to establish the requisite "pattern of racketeering activity" under 18 U.S.C. § 1962(c) ("Section 1962"), thereby failing to establish an element of a RICO claim. (HL Mot., Dkt. 16, at 8; GMW Mot., Dkt. 21, at 3, 5; *see also* Mem. in Supp. of Ltr., Dkt. 11, at 10.) The GMW Defendants also argue that Plaintiff has failed to meet the pleading burden for the fraud claims that form Plaintiff's alleged predicate acts under RICO. (GMW Mot., Dkt. 21, at 3.) The Court agrees that Plaintiff has failed to sufficiently plead his RICO case.

The RICO statute allows for individuals or entities who have been injured in their business or property by a violation of Section 1962 to recover treble damages, attorney's fees, and costs. *MinedMap, Inc. v. Northway Mining, LLC*, No. 19-CV-0501, 2021 WL 1926452, at *4 (N.D.N.Y. May 13, 2021) (collecting cases), *aff'd*, No. 21-CV-1480, 2022 WL 570082 (2d Cir. Feb. 25, 2022) (summary order). Because of the unusual potency of these claims, "courts have an obligation to scrutinize civil RICO claims early in the litigation [to] separate the rare complaint that actually states a claim for civil RICO from that more obviously alleging common law fraud." *Id.* at *5 (internal citations omitted); *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 220 (E.D.N.Y. 2014) ("[C]ourts should strive to flush out frivolous RICO allegations at an early stage of the litigation[.]" (quoting *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996)). "RICO claims premised on mail or wire fraud must be

particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014); *One World, LLC v. Onoufriadis*, No. 21-CV-374, 2021 WL 4452070, at *2 (2d Cir. Sept. 29, 2021) (summary order).

"For a RICO claim to survive, a plaintiff must adequately allege 'the existence of seven constituent elements: (1) that the defendant[s] (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invest[s] in, or maintain[s] an interest in, or participate[s] in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce.'" *MinedMap*, 2022 WL 570082, at *1 (quoting *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (citing Section 1962(a)-(c))); *see Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018) ("[A] plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."). "A 'pattern of racketeering activity' must consist of at least two predicate acts, 'the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity.'" *One World*, 2021 WL 4452070, at *2 (quoting 18 U.S.C. § 1961(5)); *see Kim*, 884 F.3d at 103 (noting statutory definition of "pattern of racketeering activity" as "at least two acts of racketeering activity within a ten-year period"). "The acts of racketeering activity that constitute the pattern must be among the various criminal offenses listed in § 1961(1), and they must be related, and amount to or pose a threat of continuing criminal activity." *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2d Cir. 2008) (internal citations omitted). Once a plaintiff has adequately alleged the RICO violation, they must then also adequately allege that they were "injured in [their] business or property by reason of [this] violation." *MinedMap*, 2021 WL 1926452, at *5 (internal citations omitted).

1.    <u>Alleged Predicate Acts Are Insufficient</u>

Plaintiff alleges a range of predicate acts which, in Plaintiff's framing, coalesce into a "pattern of racketeering." (*See, e.g.*, Compl., Dkt. 1, ¶ 105.) These include: wire fraud under 18 U.S.C. § 1343; extortion under 18 U.S.C. § 1951; obstruction of justice under 18 U.S.C. § 1503; evidence tampering under 18 U.S.C. § 1512; and conspiracy to commit fraud under 18 U.S.C. § 1349. (*Id.* ¶¶ 118–36.)

Predicate acts sounding in fraud must satisfy Federal Rule of Civil Procedure 9(b)'s heightened pleading standard of particularity. *See Spool*, 520 F.3d at 185; *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 178 (2d Cir. 2004). Specifically, a RICO plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Town of Islip v. Datre*, 245 F. Supp. 3d 397, 413 (E.D.N.Y. 2017) (quoting *Anatian v. Coutts Bank (Switzerland) Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)). If "there are multiple defendants involved, the plaintiff must 'connect the allegations of fraud to each individual defendant.'" *Colony at Holbrook, Inc. v. Strata G.C., Inc.*, 928 F. Supp. 1224, 1231 (E.D.N.Y. 1996) (quoting *Ctr. Cadillac, Inc. v. Bank Leumi Tr. Co.*, 808 F. Supp. 213, 230 (S.D.N.Y. 1992), *aff'd*, 99 F.3d 401 (2d Cir. 1995)).

The GMW Defendants argue that Plaintiff has failed to meet this heighted fraud pleading standard. (GMW Mot., Dkt. 21, at 3.) However, that is not the problem with the Complaint. Plaintiff has in fact pleaded the who, what, when, where, and why of Defendants' alleged fraud. (*See, e.g.*, Compl., Dkt. 1, at ¶¶ 6–10.) Rather, the fatal defect in the Complaint is that Defendants' allegedly fraudulent conduct, including the "obstruction of justice" and "wire fraud," were all committed as part of their representation of Plaintiff. "Well-established precedent and sound public policy" dictate that, "in the absence of corruption, such litigation activity cannot act as a

predicate offense for a civil-RICO claim." *Kim*, 884 F.3d at 102 (upholding district court's dismissal of civil RICO claims where plaintiff had alleged attorney declarations constituted, *inter alia*, obstruction of justice and wire fraud) (collecting cases from different circuits)[7]; *see Weaver v. Boriskin*, 751 F. App'x 96, 98 (2d Cir. 2018) (summary order) (affirming dismissal of RICO claims based on "fraudulent litigation activities" which "cannot constitute a RICO predicate act" (quoting *Kim*, 884 F.3d at 104)); *Curtis & Assocs., P.C. v. L. Offs. of David M. Bushman, Esq.*, 758 F. Supp. 2d 153, 174 (E.D.N.Y. 2010), *aff'd sub nom.*, 443 F. App'x 582 (2d Cir. 2011) (joining "a long line of cases in finding, as a matter of law, that the 'litigation activities' . . . cannot constitute predicate acts for the purposes of RICO" (collecting cases)). Because Plaintiff does not allege corruption, even construing his pleadings most liberally as befits his *pro se* status, this pleading deficiency alone requires the dismissal of Plaintiff's RICO claim for failure to state a claim.[8]

### 2.    Alleged Pattern of Racketeering Is Insufficient

Even if Plaintiff could allege predicate acts sufficient to survive *Kim*, Plaintiff has failed to adequately plead a "pattern of racketeering activity." *MinedMap*, 2022 WL 570082, at *1; *see Rosner v. Rosner*, 766 F. Supp. 2d 422, 425 (E.D.N.Y. 2011) (granting defendants' motion to dismiss based solely on plaintiff's failure to show a "pattern of racketeering," "even assuming that

---

[7] *Kim* cites to, *inter alia*, *Snow Ingredients, Inc. v. SnoWizard, Inc.* to reinforce its view of what litigation activities may serve as a predicate RICO offense. 884 F.3d at 104 (citing *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016)). In turn, *Snow Ingredients* explains that only litigation activity that included "bribery of parties and witnesses" was allowed to sustain a civil RICO action. 833 F.3d at 525, (citing *Feld Ent. Inc. v. Am. Soc'y for the Prevention of Cruelty to Animals*, 873 F. Supp. 2d 288, 318 (D.D.C. 2012)).

[8] To the extent that Plaintiff's allegations form the basis for a malpractice claim, this claim arises under state law and is insufficient to vest a federal court with subject matter jurisdiction. *Turner v. Doe*, No. 23-CV-9516 (PKC) (LB), 2024 WL 36995, at *2 (E.D.N.Y. Jan. 3, 2024) (citing *Fine v. City of N.Y.*, 529 F.2d 70, 74 (2d Cir. 1975)); *Chery v. Law Office of Felix Kozak, P.C.*, No. 11-CV-3471 (LDH) (LB), 2011 WL 4056069, at *2 (E.D.N.Y. Aug. 28, 2011).

[plaintiff's fraud pleading] burden has been met"). The "continuity" requirement to prove a "pattern of racketeering" "can be satisfied either by showing a 'closed-ended'. . . or . . . 'open-ended' pattern[.]" *Spool*, 520 F.3d at 183 (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989).

a)  <u>No Closed-Ended Pattern of Racketeering Alleged</u>

A "closed-ended" pattern is a series of related predicate acts extending over a substantial period of time. *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004) (quoting *GICC Cap. Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995)); *Spool*, 520 F.3d at 183 (collecting cases). "The inquiry is primarily a temporal concept," *One World*, 2021 WL 4452070, at *2 (internal citations omitted), though "factors such as the number and variety of predicate acts and the number of participants may be germane," *Spool*, 520 F.3d at 184. "Since the Supreme Court decided *H.J. Inc.* in 1989, [the Second Circuit has] never held a period of less than two years to constitute a substantial period of time." *Id.* (internal citations omitted). "Although [the Second Circuit has] not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity." *Spool*, 520 F.3d at *184; *see also Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 416 (E.D.N.Y. 2017) (describing "no precedent for finding closed-ended continuity" in "racketeering period of only 10 months"). Indeed, "while two years may be the *minimum* duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern." *MinedMap*, 2022 WL 570082, at *1 (quoting *First Cap.*, 385 F.3d at 181).

Here, Plaintiff alleges several predicate acts taking place between January 2024 and, construing the Complaint most liberally, October 2024.[9]  (*See* Dkt 1, ¶¶ 18, 32.)  They span at most a series of months, which is not long enough to sustain "closed-ended" continuity.  *See MinedMap*, 2022 WL 570082, at *1.  They involve, at most, only a handful of individuals, rather than a number or variety of participants, in a simple scheme consisting of discrete acts and a single victim, which further dooms Plaintiff's pleadings.  *See One World*, 2021 WL 4452070, at *2.  Plaintiff's allegations therefore fail to "provide some basis for [this Court] to conclude that [D]efendants' activities were neither isolated nor sporadic, and that defendants engaged in such activity for a substantial period of time."  *Sky Med.*, 17 F. Supp. 3d at 226 (internal citations omitted).  Thus, Plaintiff has failed to adequately plead a "closed-ended" pattern of racketeering.

### b)    No "Open-Ended" Pattern of Racketeering Alleged

By contrast, "an 'open-ended' pattern of racketeering activity . . . poses a threat of continuing criminal conduct beyond the period during which the predicate acts were performed." *Spool*, 520 F.3d at 183 (internal citations omitted); *One World*, 2021 WL 4452070, at *3.  "Where the enterprise primarily conducts a legitimate business, there must be some evidence from which it may be inferred that the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity."  *One World*, 2021 WL 4452070, at *3 (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 243 (2d Cir. 1999)).  More specifically, allegations of open-ended continuity withstand a motion to dismiss only where "there must be some evidence from which it may be inferred that

---

[9] While Defendants ceased their representation of Plaintiff in April 2024 (*see, e.g.*, Compl., Dkt. 1, ¶ 1), the Court liberally construes Plaintiff's pleadings because he is *pro se* and therefore includes in its analysis any alleged actions taken by Defendants through October 2024, which is when Plaintiff alleges the HL Defendants fraudulently "backdated" Defendant Bogucki's involvement with HL as part of the fraud scheme.  (*Id.* at ¶ 31.)

the predicate acts were the regular way of operating that business, or that the nature of the predicate acts themselves implies a threat of continued criminal activity." *Spool*, 520 F.3d at 185.

Here, Plaintiff alleges an "ongoing" pattern of obstruction, fraud, and extortion related to Defendants' dealings with Plaintiff. (Compl., Dkt. 1, ¶ 131.) However, this allegedly ongoing pattern of illegal conduct is based on behavior confined to the interactions between Defendants and Plaintiff,[10] (*id.* ¶ 105), and is thus "inherently terminable," *One World*, 2021 WL 4452070, at *3 (quoting *GICC*, 67 F.3d at 466 (internal citations omitted)). Even construing Plaintiff's allegations most liberally due to his *pro se* status, there are no facts in Plaintiff's Complaint that would allow this Court to reasonably infer that "Defendants' act of [] fraud constituted a regular way of conducting [their] affairs" generally, i.e. with clients other than Plaintiff. *Sky Med.*, 17 F. Supp. 3d at 227 (quoting *Lyons*, 843 F. Supp. 2d at 370). The facts that Plaintiff does allege fail to show "how the fraud scheme would continue into the future," *MinedMap*, 2022 WL 570082, at *2, since Plaintiff's relationship with the HL Defendants has ceased. Plaintiff has thus also failed to adequately plead an "open-ended" pattern of racketeering.

Therefore, Plaintiff has failed to adequately allege that the HL Defendants pose a threat of continuing racketeering conduct, which, in itself, warrants dismissal of his RICO claim against the HL Defendants.

---

[10] On May 17, 2025, Plaintiff submitted additional briefing, seeking to draw this Court's attention to other cases pending in New York state court against the HL Defendants that allegedly contain similar allegations from other clients. (Dkt. 33.) However, because this filing contravened the Court's April 22, 2025 docket order, specifically notifying Plaintiff that "[n]o further submissions will be considered unless requested by the Court," the Court has not considered the filing's contents. In any event, even if the Court were to consider the contents of this submission, they would not change the outcome of this opinion given the numerous deficiencies in the Complaint discussed herein.

**B.      Plaintiff's RICO Allegations against the GMW Defendants Must be Dismissed**

The Court's rationale, *supra*, is even more applicable to the GMW Defendants, who have also moved to dismiss Plaintiff's claims for failure to state a claim under Rule 12(b)(6). (GMW Mot., Dkt. 21.)  Plaintiff alleges that the GMW Defendants, through one of their attorneys, Bogucki, participated in the effort to have Plaintiff file for bankruptcy, which would have in turn precluded Plaintiff from seeking recovery for malpractice from the HL Defendants. (*See, e.g.*, Compl., Dkt. 1, ¶ 2.)  While Plaintiff does not allege that GMW actually participated in the fraud underpinning Plaintiff's claims, Plaintiff sues GMW based on theories of agency and vicarious liability. (*See id.* ¶ 80 (citing *Meyer v. Holley*, 537 U.S. 280, 286 (2003).)  Plaintiff's theory is that because GMW did not "promptly repudiate" Bogucki's "unauthorized act" of offering Plaintiff bankruptcy advice, GMW "ratified" Bogucki's alleged fraudulent acts. (*Id.* ¶ 81.)

The Court declines to analyze Plaintiff's claims of vicarious liability and agency because, even if these were sufficiently pleaded to include GMW in HL's alleged fraud scheme, Plaintiff's allegations as to that scheme are deficient, *see supra*.  Similarly, Bogucki's alleged participation in HL's fraud scheme—one video call with Plaintiff, and, construing the complaint most liberally, providing his consent to add his information to HL's website "post hoc"—is insufficient to establish a conspiracy to violate RICO or "cover up" the fraudulent inducement scheme, or to make Bogucki subject to RICO liability.  Nor do these allegations enhance the deficiently pleaded RICO claim so that it survives dismissal.  Plaintiff's RICO claim against GMW must therefore be dismissed.

*      *      *

Plaintiff's RICO claim is therefore dismissed with prejudice.

## C.     The Court Declines to Exercise Supplemental Jurisdiction over Plaintiff's State Law Claim of Fraudulent Inducement

"[D]istrict courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which [it] has original jurisdiction[.]"  28 U.S.C. § 1367(c)(3).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Pension Benefit Guar. Corp. ex rel. Saint Vincent Cath. Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013) (quoting *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003)); *One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 82 (2d Cir. 2010) ("If all of a plaintiff's federal claims are dismissed, a district court is well within its discretion to decline to assert supplemental jurisdiction over any state law claims[.]" (citing *WWBITV, Inc. v. Vill. of Rouses Point*, 589 F.3d 46, 49 (2d Cir.2009))).

Having dismissed Plaintiff's RICO claim, which is the only federal claim in this matter, the Court declines to exercise supplemental jurisdiction over the remaining state law claim of fraudulent inducement.  Accordingly, the Court dismisses Plaintiff's state law claim as to all Defendants without prejudice to re-file in state court.

## D.     Leave to Amend

"When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  *Saunders v. Queensborough Cmty. Coll.*, No. 13-CV-5617 (PKC) (RML), 2015 WL 5655719, at *10 (E.D.N.Y. Sept. 24, 2015) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999)); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").  The decision whether to grant leave to amend is left to the discretion of the district court.  *Saunders*, 2015 WL 5655719, at *10 (internal citations omitted).

Although the Court is skeptical that Plaintiff can sufficiently plead a RICO claim, based on the nature of the allegations in this action and the 68 pages and over 140 paragraphs in Plaintiff's current Complaint, out of an abundance of caution, the Court will allow Plaintiff thirty (30) days to seek leave to amend the Complaint solely with regard to the following two RICO elements: 1) additional facts tending to show that the HL Defendants' alleged predicate acts are not barred by existing Second Circuit precedent regarding "litigation activities"; and 2) additional facts demonstrating that the HL Defendants' alleged pattern of racketeering, with or without Bogucki's involvement, satisfies the "open-ended continuity" requirement.  The Court notes that should Plaintiff seek leave to file an amended complaint, he may also include his state law fraudulent inducement claim over which the Court has declined to exercise supplemental jurisdiction.  Plaintiff is cautioned to carefully review the Court's discussion regarding sanctions, *infra*, before making any additional filing.

## II.    Motions for Sanctions

Both the HL Defendants and Plaintiff bring sanctions motions against each other.  The HL Defendants move for sanctions against Plaintiff under Rule 11(c) based on Plaintiff's allegations of "unsubstantiated racketeering conspiracies," and because Plaintiff's filings were conducted "for an improper purpose, in bad faith, and in violation of Rule 11(b)(1)."  (HL Mot., Dkt. 16, at 12–13; *see also* Dkts. 10, 11.)  Plaintiff's sanctions motion against the HL Defendants argues that the HL Defendants' sanctions motion violated the "mandatory 21-day 'safe harbor' provision under Federal Rule of Civil Procedure 11(c)(2)" and is a "deliberate, bad-faith abuse of Rule 11 procedures in an attempt to intimidate Plaintiff and improperly burden both Plaintiff and the Court."  (Pl. Mot., Dkt. 17, at ECF 4–5.)

A.      **Defendants' Sanctions Motion**

At this time, the Court declines to impose Rule 11 sanctions on Plaintiff.  The HL Defendants argue for sanctions on the basis of the alleged frivolity of Plaintiff's complaint and the stigmatizing effect of (improper) RICO claims.  (HL Mot., Dkt. 16.[11])  In his response, Plaintiff fails to contend with the substance of the HL Defendants' sanctions motion.[12]

Focusing on the substantive issues raised by Defendants in support of their sanctions motion, the Court weighs two considerations: 1) Plaintiff's *pro se* status; and 2) the unique nature of RICO claims.

1.      Plaintiff's *Pro Se* Status

The availability of sanctions under Rule 11 is designed to prevent the abuse of the adversarial system and ensure the efficient use of judicial resources.  *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 542 (1991) ("Rule 11 is aimed at curbing abuses of the judicial system." (internal citations omitted)); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 97 (2d Cir. 2004) ("Rule 11 sanctions are designed to deter baseless filings." (internal citations omitted)); *Gale v. Stallone*, No. 91-CV-3467 (JFK), 1993

---

[11] The HL Defendants filed initial sanctions briefing on February 20, 2025.  (Dkts. 9–11.) After the Court directed the HL Defendants to "file a letter brief of no more than fifteen (15) pages in support of their motion to dismiss and for sanctions," (2/21/2025 Dkt. Order), the HL Defendants did so on March 14, 2025, (HL Mot., Dkt. 16).  While the Court has reviewed all submissions, its analysis draws primarily from the HL Defendants' later, omnibus filing.

[12] Plaintiff submitted an omnibus response, (Dkt. 23), to the HL Defendants' omnibus motion to dismiss and motion for sanctions, (HL Mot., Dkt. 16), in which Plaintiff addressed the motion to dismiss but not the motion for sanctions.  In effect, Plaintiff's primary response to the HL Defendants' sanctions motion is his own sanctions motion alleging procedural deficiencies in the HL Defendants' sanctions motion, (Pl. Mot., Dkt. 17), which the HL Defendants concede, (Dkt. 27).  Although the HL Defendants' admitted procedural failure constitutes an independent and sufficient ground for dismissing the HL Defendants' sanction motion, the Court instead denies the HL Defendants' motion for the substantive reasons discussed *infra*.

WL 248809, at *1 (S.D.N.Y. June 30, 1993) ("The purpose of Rule 11 sanctions is to discourage use of the judicial process for injuring the defendant with 'dilatory and abusive litigation tactics' and to promote judicial efficiency." (citing *McMahon v. Shearson/American Express, Inc.*, 896 F.2d 17, 21–22 (2d Cir. 1990))).  The primary thrust of Rule 11 is to ensure that parties have sufficient basis for the documents they file with the court.  *See* Fed. R. Civ. P. 11.  *Pro se* parties are considered, by definition, "untutored in the law." *Maduakolam*, 866 F.2d at 56.  Hence, while *pro se* litigants are subject to Rule 11 sanctions, *Goodman v. Bouzy*, No. 21-CV-10878 (AT) (JLC), 2023 WL 3296203, at *16 (S.D.N.Y. May 8, 2023) (collecting cases) *reconsideration denied*, 2023 WL 3949084 (S.D.N.Y. June 12, 2023), *report & recommendation adopted*, 2023 WL 4235851 (S.D.N.Y. June 28, 2023), courts exercise their discretion to sanction *pro se* parties with particular consideration for the "special circumstances" of these parties, *Maduakolam*, 866 F.2d at 56.

The Court extends this extra consideration to Plaintiff because of his *pro se* status.  Plaintiff has alleged a detailed and specific fact pattern in support of his RICO claim.  (*See generally*, Compl., Dkt. 1.)  There is nothing obviously or inherently fanciful or impossible about the facts he alleges or his suspicions about Defendants' alleged motivations.  At this stage, with only one complaint on which to assess Plaintiff's understanding of the RICO statute and relevant case law, the Court cannot definitively conclude that Plaintiff lacked a sufficient factual basis to bring his claims such that Rule 11 sanctions would be warranted, especially given Plaintiff's limited understanding of the relevant and complicated RICO jurisprudence.  *See Amity Digital*, 2025 WL 902647, at *8 ("Under Rule 11, [s]anctions may not be imposed unless an allegation is utterly lacking in support." (internal citations omitted)); *see House*, 2025 WL 1309602, at *2 (noting that *pro se* Plaintiff was "untutored in the law" in denying sanctions motion (quoting *Maduakolam*, 866 F.2d at 56)).  The Court also cannot definitively conclude, based on the allegations presented,

that Plaintiff's pleadings are so tainted by his desire to "interfere with Helbraun & Levey's business[] [and] force Defendants to expend litigation costs, . . . for the purposes of using the litigation to make false and baseless allegations against Defendants," (HL Mot., Dkt. 16, at 13), that these potential motivations override Plaintiff's right to seek legal redress in this Court. While Plaintiff is certainly bombastic in his portrayals of perceived wrongs, this approach could be viewed as simply evincing Plaintiff's determination to secure what he believes is the measure of justice he deserves and is not, in itself, sanctionable.

Despite the Court's decision not to sanction Plaintiff at this point, the Court reminds Plaintiff that "*pro se* filings do not serve as an impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets." *Goodman*, 2023 WL 3296203, at *16 (quoting *Durant v. Traditional Invs.*, 135 F.R.D. 42, 49 (S.D.N.Y. 1991) (cleaned up)); *Flannigan v. Vulcan Power Grp.*, No. 09-CV-8473 (LAP), 2019 WL 3242531, at *12 (S.D.N.Y. July 3, 2019) (noting that litigant's *pro se* "status . . . does not insulate [them] from the imposition of [Rule 11] sanctions") (quoting *Smith v. Educ. People, Inc.*, 233 F.R.D. 137, 142, (S.D.N.Y. 2005)). *Pro se* parties have been sanctioned where their conduct had an improper purpose, such as harassment. *See, e.g.*, *Khudai v. Akamai Techs.*, No. 20-CV-3686 (JHR) (JLC), 2023 WL 7174616, at *3 (S.D.N.Y. Nov. 1, 2023) (criteria for sanctions[13] met where *pro se* plaintiff filed multiple actions with same claims "for the

---

[13] The Court does not consider these criteria in this current opinion, but notes for the parties' benefit that they include: "(1) whether the improper conduct was willful, or negligent; (2) whether it was part of a pattern . . . or an isolated event; (3) whether it infected the entire pleading, or only one particular count or defense; (4) whether the person has engaged in similar conduct in other litigation; (5) what effect it had on the litigation process in time or expense; (6) whether the responsible person is trained in the law; (7) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case." *Khudai*, 2023 WL 7174616, at *5 (internal citations omitted).

improper purpose of harassing [defendant]"); *Williams v. Off. of Child Support*, No. 21-CV-8235 (PAE) (RWL), 2023 WL 2396354, at \*4 (S.D.N.Y. Mar. 3, 2023) (recommending Rule 11 sanctions on plaintiff where there was reasonable inference that plaintiff intended to file third action for improper purpose of harassing defendant), *report & recommendation adopted*, 2023 WL 3967791 (S.D.N.Y. June 13, 2023).[14]

Furthermore, parties proceeding *pro se* could be found to be less "untutored in the law" than their *pro se* status suggests, *House*, 2025 WL 1309602, at \*2, which might strengthen a sanctions motion against the *pro se* party. *Kadan v. Williams*, No. 89-CV-3379 (SWK), 1990 WL 47680, at \*3 (S.D.N.Y. Apr. 11, 1990) (awarding sanctions against *pro se* businessman who had considerable experience with litigation), *aff'd*, 930 F.2d 909 (2d Cir. 1991); *Flannigan*, 2019 WL 3242531, at \*12 ("[S]anctions may be particularly appropriate when the offending party, although proceeding *pro se*, has demonstrated . . . competence in finding and understanding the applicable law." (quoting *Smith*, 233 F.R.D. at 142)); *see also Muniz v. Goord*, No. 04-CV-0479 (TJM), 2007 WL 2027912, at \*6 n.30 (N.D.N.Y. July 11, 2007) (discussing a "sliding scale" rather than an "all or nothing" view of *pro se* special status based on experience). Indeed, based on Plaintiff's own assertions, he might qualify as one such "less untutored" *pro se* litigant. Plaintiff describes himself as "not a typical *pro se* party[, but rather,] . . . a 57-year-old former investigative journalist with over 30 years of experience reporting for the *New York Post*, *The Dallas Morning News*, and other major outlets. [He] also sat for the LSAT in 2006, scored a 163, and was admitted

---

[14] This decision puts Plaintiff on notice regarding the elements of the claims he would have to sufficiently allege in any amended complaint. Plaintiff is cautioned to carefully consider the analysis provided herein before seeking leave to file any amended pleadings, in particular with respect to his RICO allegations. Having received the benefit of this analysis, Plaintiff might not receive the same degree of solicitude based on his *pro se* status should he seek to renew the same claims as in his current Complaint, which the Court is dismissing.

to several law schools before ultimately deciding to remain in journalism." (Dkt. 26, at ECF 2.) Plaintiff also claims to have *pro bono* legal support and to be "making strategic use of AI tool[s] to drive his lawsuit."[15] (Pl. Ltr., Dkt. 10-13, at 1–2; Proposed Press Release, Dkt. 10-15, at ECF 3.) The Court simply notes, for Plaintiff's benefit, that these are all facts that could be relevant in any future sanctions motion against him.[16] *Bryant v. Am. Embassy (AMC)*, No. 88-CV-0294, 1988 WL 68740, at *1 (S.D.N.Y. June 16, 1988) (noting that plaintiff may not "be immune from Rule 11 sanctions in respect of future pleadings, particularly since, as appears from his letter, he is able to consult with an attorney" (internal citations omitted)); *Cornett v. Bank of New York*, No. 91-CV-0605 (CSH), 1992 WL 88197, *6 (S.D.N.Y. 1992) (plaintiff who "has shown an ability to find the law and to make legal arguments . . . may be held to a somewhat higher standard than other pro se parties" (citing *Roberts v. Walter E. Heller & Co.*, 86-CV-260 (JFG), 1986 WL 10383 (N.D. Ill. Sept. 15, 1986))).

## 2. The Danger of Abusing Potent RICO Claims

The HL Defendants highlight that "Rule 11 is particularly important in [RICO] cases because commencement of a civil RICO action has an almost inevitable stigmatizing effect on those named as defendants." (HL Mot., Dkt. 16, at 12 (quoting *Charles v. Levitt*, No. 15-CV-9334 (PAE), 2016 WL 3982514, at *8 (S.D.N.Y. July 21, 2016) (internal citations omitted).) They go on to argue that "improper RICO claims are even more egregious when levied against a law firm:

---

[15] The Court cautions Plaintiff about the potential peril of relying on ChatGPT or other AI tools for legal research without checking the veracity and accuracy of the search engine's output. *See, e.g.*, *Park v. Kim*, 91 F.4th 610, 614–16 (2d Cir. 2024) (attorney referred to Second Circuit grievance panel for submitting "false statement[s] of law" provided by ChatGPT).

[16] The Court also notes that Plaintiff would be well-advised to re-channel his bombast and vitriol away from incendiary accusations and into legal research, and to use his legal knowledge and background to carefully consider the merits and sufficiency of his claims before seeking permission to file an amended complaint.

The consequences to a law firm, in particular, are nothing short of disastrous." (*Id.* (quoting *LCS Grp., LLC v. Shire LLC*, No. 18-CV-2688 (AT), 2019 WL 1234848, at *15 (S.D.N.Y. Mar. 8, 2019) (internal citations omitted).) Accordingly, the HL Defendants affirm that "[c]ourts have not hesitated to impose sanctions under Rule 11 when RICO claims have been found to have been frivolous." (*Id.* (quoting *Dangerfield v. Merrill Lynch, Pierce, Fenner & Smith, Inc*, No. 2-CV-2561 (KMW) (GWG), 2003 WL 22227956, at *13 (S.D.N.Y. Sept. 26, 2003)).)

But not all Courts in this Circuit have imposed sanctions for the failure to properly plead RICO liability. *See, e.g.*, *GWG MCA Cap., Inc. v. Nulook Cap., LLC*, No. 17-CV-1724 (SIL), 2023 WL 12004447, at *6 (E.D.N.Y. Aug. 7, 2023) (declining to sanction plaintiffs who brought RICO claims despite knowing they lacked the requisite statutory standing); *Black v. Ganieva*, No. 21-CV-8824 (PAE), 2022 WL 2354916, at *13 (S.D.N.Y. Jun. 30, 2022) (determining that "dubiously pled" RICO claims were not frivolous for the purpose of sanctions); *Rosner v. Rosner*, 766 F. Supp. 2d 422, 426 (E.D.N.Y. 2011) (declining to grant Rule 11 sanctions where RICO claim was dismissed because damages were not clear and definite); *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 455 (S.D.N.Y. 2004) (denying motion for sanctions where Plaintiff failed to properly plead RICO liability). Indeed, in a case heavily relied on by the HL Defendants, the court "exercise[d] its discretion not to impose a monetary sanction and instead [imposed] a non-monetary sanction: specifically, an admonishment." *Dangerfield*, 2003 WL 22227956, at *14.[17]

---

[17] The Court further notes that a case cited by the HL Defendants in defense of their failure to abide by Rule 11's 21-day safe harbor, *Malvar Egerique v. Chowaiki*, No. 19-CV-3110 (KPF), 2020 WL 1974228, at *29 (S.D.N.Y. Apr. 24, 2020), was subsequently vacated in part and remanded to the Southern District of New York because the district court had impermissibly sanctioned plaintiff for allegedly frivolous RICO claims, *Weiss v. David Benrimon Fine Art LLC*, No. 20-CV-3842, 2021 WL 6128437 (2d Cir. Dec. 28, 2021) (summary order).

Undoubtedly, "[c]ivil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Gutterman v. Herzog*, No. 20-CV-1081 (AMD) (LB), 2020 WL 6728787, at *3 (E.D.N.Y. Nov. 16, 2020) (internal citations omitted).  But the Supreme Court has declined to limit its power and scope by "interpret[ing] civil RICO narrowly." *Sky Med.*, 17 F. Supp. 3d 207, 221 (E.D.N.Y. 2014) (quoting *Att'y Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 139 n.6 (2d Cir. 2001)).  And the HL Defendants provide no evidence to support their hyperbolic claim that the firm's reputation has been "devastated," or even affected in any way, by Plaintiff's RICO claim in this action.

The Court therefore declines to circumscribe RICO's breadth through Rule 11 sanctions. Rather, as has happened here, the proper and sufficient avenue for neutralizing any damage to the HL Defendants' reputation from Plaintiff's RICO claim is a motion to dismiss. Dismissal of Plaintiff's claims pursuant to the applicable Rule 12(b)(6) standards adequately balances the judiciary's needs for efficiency, Plaintiff's right to access federal courts, and the HL Defendants' right to be free of the "inevitable stigmatizing effect on those named as defendants" in a civil RICO action.  *Charles v. Levitt*, No. 15-CV-9334 (PAE), 2016 WL 3982514, at *8 (S.D.N.Y. July 21, 2016) (quoting *Hoatson v. N.Y. Archdiocese*, No. 5-CV-10467 (PAC), 2007 WL 431098, at *9 (S.D.N.Y. Feb. 8, 2007)).

*     *     *

The HL Defendants' motion for sanctions against Plaintiff for filing a RICO claim in this case is therefore denied.

### B.    Plaintiff's Sanctions Motion

Rule 11(c)(2) provides that a motion for sanctions "must not be filed or presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets."  Fed. R. Civ.

P. 11(c)(2).  Rule 11's "procedural protections are intended to reduce the number of motions for sanctions and to provide opportunities for parties to avoid sanctions altogether." *Perpetual Secs., Inc. v. Tang*, 290 F.3d 132, 141 (2d Cir. 2002) (citing *Hadges v. Yonkers Racing Corp.*, 48 F.3d 1320, 1327 (2d Cir. 1995)).  "The safe-harbor provision is a *strict* procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (emphasis added) (collecting cases).

The crux of Plaintiff's motion to sanction the HL Defendants is that Defendants' sanctions motion was "procedurally improper," given that it was filed in contravention of the 21-day "safe harbor" provision of Rule 11(c)(2). (Pl. Mot., Dkt. 17, at ECF 5.)  Defendants do not contest this, but rather argue that their failure to wait 21 days after serving Plaintiff with their Rule 11 letter is excusable.  (HL Mot. Reply, Dkt. 27.)  When the HL Defendants emailed Plaintiff their intended motion for sanctions as required by Rule 11(c) and "with the intention of providing Plaintiff with 21 days to withdraw his Complaint," (*id.* at 6; HL Sanctions Resp., Dkt. 28, at 1), "Plaintiff unequivocally responded [via email], . . .'let me be crystal clear: I am not withdrawing my complaint[,]' . . .and request[ed] that Defendants file [their] motion immediately ('so go ahead, file your motion.')."  (HL Sanctions Resp., Dkt. 28, at 1 (citing Dkt. 10-22).)  The HL Defendants counter, however, that "failure to follow the safe harbor provisions perfectly may be excused where there is 'no indication that [a party] would have corrected or amended its frivolous arguments even had it been given the opportunity.'"  (*Id.* at 1 (citing *Malvar Egerique v. Chowaiki*, No. 19-CV-3110 (KPF), 2020 WL 1974228 (S.D.N.Y. Apr. 24, 2020); *Watkins v. Smith*, No. 12-CV-4635 (DLC), 2013 WL 655085 (S.D.N.Y. Feb. 22, 2013), *aff'd*, 561 F. App'x 46 (2d Cir. 2014)).)  The HL Defendants argue, in effect, that because Plaintiff made clear that he would

not withdraw his complaint, they did not need to comply with Rule 11(c)'s 21-day notice requirement.

While Rule 11's procedural protections are important and should be strictly enforced, *Watkins*, 2013 WL 655085, at *6, the Court declines to sanction the HL Defendants this time given the demonstrated futility of notice in this case—that is, Plaintiff's response to the notice demonstrates that he would not have used the 21 days to withdraw or amend his Complaint to "avoid sanctions altogether." *Perpetual Secs.*, 290 F.3d at 141 (citing *Hadges*, 48 F.3d at 1327). Nonetheless, the Court cautions the HL Defendants not to assume away this requirement in the future. Rather, should the HL Defendants wish to seek sanctions in the future, they shall fully comply with Rule 11(c), or else their sanctions motion will be summarily dismissed as procedurally improper. Indeed, should Plaintiff seek leave to file an amended complaint and the parties find themselves in a situation similar to this one, Plaintiff might actually consider withdrawing that complaint; he is entitled to the full 21-day period to make that decision.

The Court therefore declines to sanction the HL Defendants at this time based solely on their failure to fully comply with Rule 11(c). Given that Plaintiff raises no other bases on which to sanction the HL Defendants, Plaintiff's sanctions motion is denied.

## CONCLUSION

Accordingly, Defendants' motions to dismiss are granted. Plaintiff's RICO claim is dismissed with prejudice, and his state law fraudulent inducement claim is dismissed without prejudice to re-file in state court. Additionally, the parties' respective sanctions motions are denied. Plaintiff has thirty (30) days from the date of this Memorandum & Order to file a motion for leave to file an amended complaint. That motion shall explain how the proposed amended complaint cures the deficiencies identified in this Memorandum & Order and shall include as an

attachment a copy of the proposed amended complaint. Should Plaintiff seek leave to file an amended complaint, Defendants shall have three (3) weeks from the filing of Plaintiff's motion to file a response.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated: July 17, 2025
        Brooklyn, New York